UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
WILLIAM OLIPHANT,                              :
               Plaintiff,               :
                                    :   **OPINION AND ORDER**
v.                                             :
                                    :   14 CV 3241 (VB)
ANNE CALDWELL, sued in her individual          :
capacity; DAVID JOLLY, sued in his individual  :
capacity,                                      :
               Defendants.              :
--------------------------------------------------------------x

Briccetti, J.:

       Plaintiff William Oliphant brings this Section 1983 action against Anne Caldwell and David Jolly, alleging he was denied the equal protection of the laws when they twice failed to promote him to case supervisor within the Orange County Department of Social Services in 2011 and 2012.

       Before the Court is defendants' motion for summary judgment.  (Doc. #33[1]).

       For the following reasons, defendants' motion is DENIED.

       The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

       The parties have submitted briefs, statements of facts pursuant to Local Civil Rule 56.1, declarations, and affidavits with exhibits, reflecting the following factual background.

I.    Parties

       Plaintiff, an African American man, worked as a senior caseworker in the child protective services ("CPS") unit of the Orange County Department of Social Services ("DSS") from 1996

---

[1]    Due to a docketing error, there is a duplicative motion pending, styled a motion to dismiss.  (Doc. #32).  The Court does not treat this as a separate motion.

until 2014, when he retired.  As a senior caseworker, he was responsible for investigating reports and allegations of child neglect, maltreatment, and abuse, and assessing families and children who were predetermined to be at risk.  In DSS, senior caseworkers are subordinate to case supervisors and senior case supervisors, but under some circumstances can supervise caseworkers.

Twice, in May 2011 and September 2012, plaintiff unsuccessfully sought to be promoted to case supervisor.  Defendants' decisions to promote instead Laura Fredericks and Tracy Wager, both of whom are Caucasian, form the crux of this case.

Plaintiff has held a Master's Degree in Social Work from Fordham University since May 2006, and is a licensed Clinical Social Worker in New York.  Before he worked for DSS in Orange County, plaintiff worked for the New York City Administration for Children, Department of Social Service, first as a caseworker, then for four-and-a-half years as a case supervisor.

Plaintiff was disciplined twice in connection with his job at DSS.  In 1999, he was suspended for a month for unauthorized use of a County vehicle.  In 2002, he was suspended for a month for failing to provide adequate services to a family relating to the death of a child under his supervision.

From 2008 to 2013, plaintiff held various positions in the local labor union, the Civil Service Employment Association, Local 1000, in Orange County, including vice president from 2010-11, and president from 2012-13.  Plaintiff earned a monthly stipend from the union. Pursuant to a collective bargaining agreement with the County, plaintiff was allowed to perform union duties during work hours.  Plaintiff regularly did so, for at least 143 hours in 2010; at least 434 hours in 2011; and at least 494 hours during 2012.

Defendant Caldwell was the Deputy Commissioner of DSS supervising the Human Services Division from 2007 to 2013.  The Human Services Division encompasses CPS, family assessment response ("FAR") (which is a subunit of CPS), adult protective services ("APS"), and other units.  As Deputy Commissioner of the Human Services Division, Caldwell was responsible for recommending to the Commissioner candidates for hiring and promotion within the division, including to the case supervisor positions for which plaintiff applied in May 2011 and September 2012.  Caldwell decided not to recommend promoting plaintiff to these positions.

Defendant Jolly served as the Commissioner of DSS from 2005 until 2013.  Jolly was Caldwell's direct supervisor.  According to Jolly, the Commissioner is ultimately responsible for all promotion decisions within DSS, but Jolly empowered his directors and supervisors to decide who would be promoted, and never countermanded their recommendations to him.

Jolly testified at his deposition that he recalled two conversations with plaintiff in which plaintiff expressed a desire to be promoted to case supervisor, but could not remember when these conversations took place relative to the two promotions at issue in this case.  After the first conversation, Jolly and Caldwell discussed plaintiff's desire to be promoted during one of their bi-weekly meetings, and concluded plaintiff "was not a person that we were interested in promoting."  (Jolly Depo. at 29).

II.     Promotion Process at DSS

Promotions and hiring at DSS are governed by the New York State Civil Service Laws. To be hired or promoted to case supervisor, applicants must have taken a civil service examination particular to the case supervisor position.  An applicant "may" be disqualified from sitting for a particular examination if he lacks "any of the established requirements for admission to the examination or for appointment to the position for which he applies."  Civil Service Law §

50(4)(a).  After the examination, the County generates an "eligible list" of all the applicants,

including their overall score based on test performance and other factors, including seniority and

veteran status.  When a position opens up, the County must certify a list of candidates from the

eligible list who are willing to accept the position or promotion, and must hire or promote a

candidate who has or is tied for one of the three highest scores.  Civil Service Law § 61(1).

On August 7, 2009, plaintiff took a civil service examination to become eligible for

promotion to case supervisor.  Plaintiff scored 92.5 points, including an award of 2.5 points for

being a military veteran, and 2.5 points for seniority.  Plaintiff's score was the second highest on

the eligible list, behind Karen Hirtz, with 95, and directly ahead of Laura Fredericks, Christine

Brunet, Tracy Wager, and Matthew Scherdin, all of whom scored a 90.  Fredericks's score

included 4 points for seniority, while Wager's included 1.9 points for seniority.

The parties dispute the relevant qualifications to become a case supervisor at DSS.

Plaintiff submits a document dated October 22, 2012, entitled "Orange County Class

Specification" for "Title: Case Supervisor," which purports to list the duties and minimum

qualifications for a case supervisor in DSS.  (Whateley Decl. Ex. 5).  The minimum

qualifications listed are as follows:

> (A) . . . [A] Master's Degree in Social Work and one (1) year of full-time paid experience which must have been in a supervisory capacity in social casework with a public or private social service agency; OR
>
> (B) . . . [A] Bachelor's Degree in Social Work and two (2) years full-time paid experience as defined in (A) above of which one (1) year must have been in a supervisory capacity; OR
>
> (C) . . . [A] Bachelor's Degree and three (3) years of full-time paid experience as defined in (A) and (B) above of which one (1) year must have been in a supervisory capacity.

(Id. at 2).

Defendants admit these are the relevant qualifications to sit for an open competitive examination, that is, an examination for a position open to outside applicants.  However, they contend, the August 9, 2009, exam was a promotion examination, open only to current employees of DSS.  To be eligible to take this examination, defendants assert, an applicant must have either one year of experience as a senior caseworker or two years of experience as a caseworker.  Moreover, defendants assert, the required qualifications for DSS employees to take the promotion examination for a position are the same as the required qualifications to be promoted to the position.  Both sets of qualifications require a valid driver's license.

III.    2011 Promotion

In May 2011, a case supervisor position became available in the FAR subunit of CPS.  On May 16, 2011, the County certified a list of candidates who had taken the examination on August 7, 2009.  Based on the examination scores, plaintiff was listed second, behind Hirtz, and directly ahead of Fredericks, Brunet, Wager, and Scherdin.

At some point before the case supervisor position was filled, plaintiff told Caldwell he wanted to be considered for it.  However, Caldwell did not interview plaintiff for the position, or inquire further into his interest in being promoted.  Caldwell then interviewed Fredericks and recommended her for promotion, which Jolly approved.  No other candidates were interviewed, including Hirtz, the person with the highest score on the exam, although this is because Hirtz was in the process of leaving DSS.

When she was promoted in 2011, Fredericks did not hold a Master's Degree in Social Work or a New York State license as a clinical social worker.  Fredericks's only supervisory experience was in her capacity as a senior caseworker supervising a small group of caseworkers in the FAR subunit for less than a year.  At some point shortly before she was promoted,

Fredericks's driver's license had been suspended based on an alcohol-related driving offense, although the record is not clear as to whether her license was reinstated before the promotion, or whether she was convicted of a crime or a non-criminal violation.  On the other hand, Fredericks had no disciplinary record.

After Fredericks was promoted, plaintiff asked both Caldwell and Steve Gross, the County's Commissioner of Human Resources, why plaintiff was not selected instead.  According to plaintiff, Caldwell gave him no substantive response except to suggest plaintiff should volunteer his time performing more supervisory duties, to prove he can be a supervisor.  Gross told plaintiff Fredericks was chosen because of her seniority.

IV.     2012 Promotion

In the fall of 2012, another case supervisor position became available, this time in the APS unit.  Caldwell and two senior case supervisors formed a selection committee and interviewed plaintiff, Wager, Brunet, and Scherdin for the position.  Caldwell and the committee selected Wager to recommend for promotion.  Jolly approved the recommendation.

Wager holds a Master's Degree in forensic psychology and a Bachelor's Degree in psychology.  She worked as a caseworker in the Adult Protective Services unit of DSS from 2006 to 2007, and as a senior caseworker from 2007 until her promotion in the fall of 2012.  She also worked as a social work assistant at a nursing care and rehabilitation center from 1999 to 2006.  Wager does not have a New York State license as a clinical social worker.

V.      Racial Makeup of DSS

Plaintiff has submitted statistics kept by DSS suggesting African Americans were underrepresented among DSS employees during the relevant time period.  According to the 2010 Census, 17% of the population in Orange County is African American.  Yet, in its 2013 review

6

of its affirmative action programs, the County found that only 21 out of 425 employees in DSS

Protective Services were African American, or 4.9%.

Moreover, as of July 15, 2011, only one case supervisor out of 21 was African American,

or 4.8%.  The other 20 case supervisors were Caucasian.  By contrast, 11 out of 49 senior

caseworkers and 10 out of 63 caseworkers were African American, 22.4% and 15.9%,

respectively.

## DISCUSSION

I.   Legal Standards

A.   Summary Judgment

The Court must grant a motion for summary judgment if the pleadings, discovery

materials before the Court, and any affidavits show there is no genuine issue as to any material

fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law

. . . .  Factual disputes that are irrelevant or unnecessary" are not material and thus cannot

preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a

reasonable jury could return a verdict for the non-moving party.  See id.  The Court "is not to

resolve disputed issues of fact but to assess whether there are any factual issues to be tried."

Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted).  It is the moving

party's burden to establish the absence of any genuine issue of material fact.  Zalaski v. City of

Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 323. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal quotation marks and citations omitted). The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him. Dawson v. Cty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper. See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need only consider evidence that would be admissible at trial. Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).

B.    Employment Discrimination

Plaintiff's Equal Protection claim under Section 1983 is evaluated like a Title VII claim for employment discrimination, using the burden-shifting framework set forth in McDonnell

Douglas Corp. v. Green, 411 U.S. 792 (1973); see Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006).

Accordingly, plaintiff must establish a prima facie case of discrimination by showing: (1) he is a member of a protected class; (2) he satisfactorily performed his duties; (3) he suffered an adverse employment action; (4) in circumstances giving rise to an inference of discrimination. See Quaratino v. Tiffany & Co., 71 F.3d 58, 64 (2d Cir. 1995). If plaintiff establishes a prima facie case, a rebuttable presumption of discrimination arises and the burden shifts to defendants to articulate a legitimate, non-discriminatory reason for the adverse action. Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 102 (2d Cir. 2001). If defendants articulate a non-discriminatory reason, the burden shifts back to the plaintiff to show that "the adverse job action was more probably than not caused by discrimination." Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 123 (2d Cir. 2004).

Plaintiff is not required to prove the prohibited motivation was the sole or even the principal factor in the decision, but must show his protected status contributed to the employer's decision. Holtz v. Rockefeller & Co., 258 F.3d 62, 78 (2d Cir. 2001). At this final step, plaintiff may again rely on evidence first used to establish a prima facie case. See Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d at 124.

The Court can proceed directly to the third step of the McDonnell Douglas Corp. framework if defendant has already articulated legitimate, non-discriminatory reasons for the adverse employment action in question, regardless of whether plaintiff has actually made out a prima facie case. Walsh v. N.Y.C. Housing Auth., 2016 WL 3632245, at *3 (2d Cir. July 7, 2016). This is because the Court "has before it all the evidence it needs to decide whether the

defendant intentionally discriminated against the plaintiff." Id. (quoting United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983)).

"At summary judgment in an employment discrimination case, a court should examine the record as a whole, just as a jury would, to determine whether a jury could reasonably find an invidious discriminatory purpose on the part of an employer." Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d at 102.  "No one piece of evidence need be sufficient, standing alone, to permit a rational finder of fact to infer that defendant's employment decision was more likely than not motivated in part by discrimination." Walsh v. N.Y.C. Housing Auth., 2016 WL 3632245, at *3.

II.     Plaintiff's Claim

Defendants here have already articulated legitimate, non-discriminatory reasons for failing to promote plaintiff.  Therefore, the Court need not analyze whether plaintiff has made out a prima facie case, and proceeds directly to the third step of the McDonnell Douglas Corp. framework to determine whether a reasonable jury could find by a preponderance of the evidence that defendants' failure to promote plaintiff was partially motivated by race-based discrimination.  See Walsh v. N.Y.C. Housing Auth., 2016 WL 3632245, at *3.

Summary judgment is not warranted here.  A reasonable fact-finder could conclude racial discrimination more likely than not was a motivating factor in defendants' decisions not to promote plaintiff in 2011 and 2012, both because the circumstances under which plaintiff was not promoted give rise to an inference of discrimination and because there is evidence defendants' non-discriminatory reasons were pretextual.

A.      Evidence of Discrimination

Several pieces of evidence support the inference that defendants' failure to promote plaintiff was in part racially motivated.

First, on July 15, 2011, shortly before Fredericks was promoted instead of plaintiff, there was only one African American case supervisor out of 21, compared to 20 Caucasians, despite the fact that Orange County as a whole was 17% African American.  In contrast, among non-supervisors, 22.4% of senior caseworkers and 15.8% of caseworkers were African American.  A reasonable fact-finder could at least partially attribute this disparity between supervisory and non-supervisory positions to defendants' decisions about whom to promote.  See also Walsh v. N.Y.C. Housing Auth., 2016 WL 3632245, at *4-5 (lack of female bricklayers working for defendant was evidence that the decision not to hire a woman to be a bricklayer was motivated by gender discrimination).  Thus, the racial disparity among supervisors in DSS supports an inference of discrimination in this case.

Second, a reasonable fact-finder could conclude plaintiff was more qualified to be a case supervisor than either Fredericks or Wager.  Plaintiff has a Master's Degree in social work and a license in clinical social work in New York; Fredericks and Wager have neither.  Plaintiff was a case supervisor for several years in New York City; Fredericks and Wager had never been case supervisors.  And plaintiff scored higher on the applicable civil service examination than both Fredericks and Wager, and was thus higher on the eligible list than either of them.

Although "evidence of disparity in qualifications, standing alone, falls short of establishing a discriminatory motive," it nonetheless may be probative of discrimination.  Walsh v. N.Y.C. Housing Auth., 2016 WL 3632245, at *5.  The disparities between plaintiff's

qualifications and those of Fredericks and Wager thus tend to support a finding that defendants discriminated against plaintiff based on race.[2]

Finally, plaintiff has put forth evidence that neither Fredericks nor Wager were minimally qualified to be case supervisors.  According to the requirements in the "Orange County Class Specification" for "Title: Case Supervisor," they would need a full year of experience "in a supervisory capacity in social casework with a public or private social service agency." (Whateley Decl. Ex. 5).  Neither had that experience.

Defendants respond by saying the Orange County Class Specification document sets forth the criteria for outside hires, not internal promotions.  Internal promotions to case supervisor positions only need one year experience as a senior caseworker or two years as a caseworker—experience both Fredericks and Wager had when they were promoted.  But factual questions about the applicable qualifications cannot be resolved on this record.[3]

Thus, there is a genuine issue of material fact as to whether Fredericks and Wager were promoted over plaintiff despite being less qualified.  If true, this supports plaintiff's contention that race played a role in defendants' decision not to promote him.

B.    Evidence Contradicting Stated Non-Discriminatory Reasons

Plaintiff has also put forth sufficient evidence for a reasonable fact-finder to conclude that defendants' proffered non-discriminatory reasons for not promoting him are pretextual.

---

[2]    Defendants make several arguments as to why Fredericks and Wager were more qualified than plaintiff.  But it is up to the trier of fact, not the Court at summary judgment, to weigh their respective qualifications and decide what inferences to draw.

[3]    Even if defendants are correct about the applicable qualifications, the fact that only plaintiff was qualified under the requirements for outside hires tends to show plaintiff's qualifications were superior to those of Fredericks and Wager in ways that were important to the County generally.

First, defendants argue Fredericks and Wager were more qualified for their respective supervisory positions than was plaintiff.  But, as discussed above, the record contains evidence from which a reasonable fact-finder could conclude he was more qualified than they were.

Second, defendants offer Fredericks's seniority as a non-discriminatory reason she was promoted instead of plaintiff.  Indeed, Fredericks had worked for the County for eleven more years than had plaintiff.  But this rationale is undercut somewhat by plaintiff's seven years of seniority over Wager, the other person promoted over him.  Thus, a reasonable fact-finder could conclude Fredericks's seniority was not the real reason for her promotion.

Third, defendants point to plaintiff's disciplinary record and Fredericks's and Wager's lack thereof.  But this is undercut somewhat both by the fact that plaintiff was disciplined so long ago, in 1999 and 2002, while Fredericks's alcohol-related driving offense was much more recent.  Again, a reasonable fact-finder could disbelieve this rationale.

Fourth, defendants argue plaintiff's frequent, albeit permitted, absences from work for union responsibilities constitute a non-discriminatory reason not to promote him.  But according to plaintiff, neither Jolly nor Caldwell ever told him his union duties were a reason he was not being promoted, even when plaintiff asked Caldwell why he had been passed over in 2011.  Therefore, a reasonable fact-finder could conclude this justification was made after the fact.

Fifth, defendants argue plaintiff was not promoted in part because he had many overdue reports.  But plaintiff has submitted records showing the following: in a report dated January of 2010, plaintiff was overdue on 78% of his reports, while Wager was overdue on 82% of hers and Fredericks was overdue on 100%; in a report dated January of 2011, plaintiff was overdue on 86% of his reports, while Wager was overdue on 95% of hers; and in a report dated January of 2012, plaintiff was overdue on 100% of his reports, while Wager was overdue on 80%.  Thus, a

13

reasonable fact-finder could conclude overdue reports were not an important factor in the promotion decision because all three candidates frequently had overdue reports.

III.     Jolly's Personal Involvement

Alternatively, defendants argue Jolly cannot be held liable under Section 1983 because he delegated promotion decisions to his staff and therefore was not personally involved in the alleged discrimination against plaintiff.

The Court disagrees.

Both times plaintiff was not promoted, Jolly was responsible for the ultimate decision on whom to promote.  Moreover, plaintiff told Jolly about his interest in being promoted, and at some point thereafter, Jolly and Caldwell agreed plaintiff "was not a person that we were interested in promoting."  (Jolly Depo. at 29).  Finally, as set forth above, a reasonable fact-finder could conclude the decision not to promote plaintiff was based in part on his race.  Given the evidence that (i) Jolly was involved in the decision; and (ii) the decision was based partially on race, there is a jury question as to whether Jolly was involved in the decision not to promote plaintiff based partially on his race, in violation of plaintiff's equal protection rights.  This is sufficient to meet the personal involvement requirement.

## CONCLUSION

Defendants' motion for summary judgment is DENIED.

By October 3, 2016, the parties shall submit a joint pretrial order in accordance with the

Court's Individual Practices.

All counsel shall attend a case management conference on October 13, 2016, at 9:30

a.m., at which time the Court will set a trial date and a schedule for pretrial submissions.

The Clerk is instructed to terminate the motion.  (Docs. ##32, 33).

Dated: August 31, 2016
      White Plains, NY

                    SO ORDERED:

                    Vincent L. Briccetti
                    United States District Judge